**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**KAYLA REECE** **PLAINTIFF**

**VS.** **No. 4:25-cv-01062 LPR/PSH**

**FRANK BISIGNANO, Commissioner,**
**Social Security Administration** **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Plaintiff Kayla Reece ("Reece") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Bisignano") to

deny her claim for Supplemental Security Income ("SSI"). Reece contends the Administrative Law Judge ("ALJ") erred in three ways: (1) by failing to fully and fairly develop the record; (2) by erring at Step 2 of the sequential evaluation; and (3) in reaching a residual functional capacity ("RFC") without support from either examining or treating source opinion evidence. There is merit to Reece's first claim, and the Court recommends that the case be reversed and remanded for further proceedings.

The parties ably summarized the medical records and the testimony given at the telephonic administrative hearing, which was conducted on May 23, 2024. (Tr. 42-78). The Court has carefully reviewed the record to determine whether there is substantial evidence to support Bisignano's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from April 9, 2021, when Reece protectively filed her application, through August 6, 2024, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questions posed by the ALJ, Reece said she last worked in 2016 as a CNA. Reece was 34 at the time of the hearing, stood 5'2", and weighed 216 pounds. She had the equivalent of a high school education and obtained her CNA license in 2013. Her past work was as a CNA and as a cashier. When asked to explain why she had been unable to work, she replied "I have really bad issues

with my back," and also described suffering from scoliosis, degenerative disc disease, pain, and swelling in her feet. (Tr. 51-52). Reece stated she kept her feet up "all day" to address the swelling. (Tr. 52). Reece resided with her husband of three years and her two teenage children (15 & 14).

Reece claimed that her children, aunt, or cousins stay with her during the day while her husband is at work because of mental issues, including "really bad anxiety and depression" and being suicidal. (Tr. 54). She stated she lost a brother and an uncle to suicide and Reece stated she was still having issues dealing with her mother's death a few years earlier. She described suffering from chest pains (vasospasms) that caused her to "constantly go in and out of the ER with this pain." *Id.* Reece indicated she had sobriety issues in the past but was six years sober. Despite her sobriety, she stated her mental health had recently and dramatically declined and she was being treated by a psychiatrist and counselors and receiving medications. According to Reece, Lamictal helped with her anxiety but only for two or three days.

Reece's numerous emergency room visits were for chest pains, and she indicated she had a fourth heart catheterization about three months prior to the hearing. Reece testified the chest pains prevented her from playing with her children, from taking a shower on her own, caused her to "feel weak a lot" and

increased her suicidal thoughts. (Tr. 60). These pains come "out of the blue" and it "feels like somebody is crushing my heart" and "I can't breathe" and "all I can do is scream." *Id.* Reece said she experiences these events often (five days a week), and they last until she gets morphine and Ranolazine. She explained that her physician provided instructions which help her deal with this problem without going to the emergency room. After these episodes Reece gets "really weak and just exhausted." (Tr. 62).

Reese described other physical problems, such as chronic migraines, severe incidents of a bloody nose, vomiting, a pituitary tumor, scoliosis, and degenerative disc disease requiring steroid shots and nerve burns in her back. The steroid shots provide relief for "just days" and the most recent nerve burns "didn't work at all." (Tr. 63). Reece indicated the pain prevented her from standing for a long period and she rolled side to side when in her recliner for relief.

Reece also described mobility issues related to her weight gain (over 100 pounds gained after getting sober). For example, she testified her husband, aunt, or kids help her walk to the bathroom and get settled in her recliner. She stated she does not drive and no longer goes anywhere other than doctor appointments.

Responding to additional questions from the ALJ, Reece stated she used a nebulizer machine daily and inhalers for asthma and COPD. She said she did no

cooking, cleaning, laundry, or shopping, and her daily activities consisted of watching television and napping, in part because of side effects of her medicine (fatigue, dizziness, nausea, and drowsiness). Reece estimated she could sit in an office-type chair for "maybe a few minutes," could stand for "five minutes most," and the farthest she could walk was from her car to the doctor's office, but sometimes required wheelchair assistance. (Tr. 66-67).

Reece elaborated on her migraines – she received monthly Emgality shots, takes Nurtec and Excedrin Migraine Extra Strength – stating they occur 4-5 times a week, lasting days at a time ("the longest one I've had one was a week"). (T. 67). Reece said she did not sleep well.

Dr. Larry Seifert ("Seifert"), a vocational expert, testified. The ALJ asked Seifert to consider a hypothetical worker of Reece's age, education, and experience, who could perform light work with the following restrictions: no ladders, ropes, or scaffolds; no concentrated exposure to dust, fumes, or other pulmonary irritants; no extreme heat or humidity; unskilled work; can understand, remember, and carry out simple, routine, repetitive tasks; can respond to usual work situations and routine work changes; and social interaction is incidental to the work performed. Seifert testified that such a hypothetical worker could perform the jobs of merchandise marker, sorter, and small product assembler.

If the first hypothetical question was altered to limit Reece to sedentary work, Seifert stated jobs were available, such as ticket checker, addressing clerk, and document clerk.

Seifert stated no jobs would be available if the hypothetical worker was absent two days a month. In addition, no jobs would be available for a hypothetical worker needing work breaks in excess of 15 minutes, for a worker needing to keep her legs elevated, or for a worker that cannot interact appropriately with supervisors, co-workers, or the general public. Finally, if the hypothetical worker was limited to reasoning level 1 jobs, none would be available. (Tr. 73-77).

*The ALJ's Decision*

Following the administrative hearing the ALJ, in her August 6, 2024, decision, determined Reece had the following severe impairments: asthma/chronic obstructive pulmonary disease (COPD); non-cardiac chest pain; atypical angina; history of atrial septal defect with repair; history of non-ST-elevation myocardial infarction (NSTEMI); obesity; posttraumatic stress disorder (PTSD); anxiety; and depression. The ALJ found there were medically determinable impairments which were not severe: pituitary microadenoma; migraines; gastroesophageal reflux disease; left ankle tear; hiatal hernia; hypertension; fatty liver; insomnia; mild

degenerative disc disease of the lumbar spine; and past substance abuse of methamphetamine. The ALJ considered all of Reece's impairments, including those that were not severe, in assessing her RFC.

The ALJ found Reece did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ specifically addressed whether Reece met Listings 12.04 and 12.15 (mental impairments). As part of the analysis of mental impairments the ALJ considered the "paragraph B" criteria, rating Reece in four broad areas of functioning, finding she had: (1) a mild limitation in understanding, remembering or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation with regard to concentrating, persisting or maintaining pace; and (4) a moderate limitation in adapting or managing oneself. Since Reece was not markedly limited in two of these areas, or extremely limited in one area, the "paragraph B" criteria were not satisfied. The ALJ also found the "paragraph C" criteria were not met.

The ALJ determined Reece had the RFC to perform light work with the restrictions which mirrored those in the first hypothetical question posed to Seifert. The ALJ thoroughly reviewed Reece's testimony at the administrative hearing. Citing the appropriate factors from SSR 16-3p, the ALJ determined Reece's

impairments could reasonably be expected to cause her symptoms. However, the ALJ found her statements regarding the intensity, persistence and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 23).

The ALJ also considered Reece's complete medical history, beginning with a repair of an atrial septal defect in 2005. The ALJ noted diagnoses made prior to the relevant period, including a 2020 diagnosis of amphetamine-type substance abuse disorder in sustained remission, a 2016 diagnosis of scoliosis, and a 2017 diagnosis of degenerative disc disease, as well as treatment for asthma/COPD, anxiety, depression, PTSD, and drug abuse.

Treatment during the relevant period included visits to Counseling Associates, with the last treatment in June 2021. In March 2021, it was noted that Reece was awarded full custody of her children. Reece was "much improved" on discharge and her life and mood were described as stable. (Tr. 24).

The ALJ reviewed lumbar spine treatment following a November 2020 MRI reflecting mild degenerative disc disease. Reece received lumbar spine injections for pain in 2021 and had radiofrequency ablation procedures in April 2021 and September 2022, with physical therapy occurring in 2021. Reece received an additional lumbar radiofrequency ablation procedure in March 2023.

The ALJ detailed Reece's numerous complaints of chest pain and treatment. In September 2021, Reece complained of chest pain at an emergency room visit. She also complained of chest pain on a visit to Dr. Jeffrey Spear in June 2023, and again of "acute chest pain" on July 12, 2023. She was seen in the emergency room for chest pain on October 2, 8, 17, November 17, 25, 28, and December 20 and 28, 2023, and on January 16, 29, March 15, 17, April 3, 15, and May 17, 2024. The ALJ noted that Reece was released the same day on each emergency room visit with the exception of two visits (on September 20 and October 26, 2023), when she was hospitalized for observation. The ALJ noted a heart catheterization and angioplasty in September 2023 and a catheterization and angiogram in February 2024. In addition, the ALJ observed that Reece continued with pain management and lumbar spine injections throughout 2023 and 2024.

The ALJ found the opinions of the state agency consultants "only partially persuasive." (Tr. 28). These opinions were provided on October 7, 2021 (Dr. Carttar – Tr. 107-116), October 17, 2022 (Dr. Reid – Tr. 130), and January 5, 2023 (Dr. Ballard --- Tr. 127). The ALJ also found the June 19, 2019 opinion of Mark Coffman, LPC unpersuasive.

*Failure to fully and fairly develop the record*

In opposing this argument, Bisignano is correct in many regards. The ALJ's

duty is only to "develop a reasonably complete record." *See Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). The burden of proof falls on the claimant to prove disability. *See Thomas v. Sullivan*, 928 F.2d 255 (8th Cir. 1991). And the pertinent regulations provide that consultative examinations at government expense are discretionary and required only when necessary to enable the ALJ to make a disability determination. *See* 20 C.F.R. §§ 416.917, 416.919a(a).

Even so, the record before the ALJ was inadequate. The inadequacy is not the *quantity* of medical records. Indeed, the transcript here is more than 4,000 pages. The troubling aspect is the timing of the medical opinions analyzed by the ALJ. It is unclear what value, if any, could be assigned to expert opinions in this instance since these opinions pre-date much of Reece's treatment. The opinions considered by the ALJ are dated June 2019, October 2021 and 2022, and January 2023. The experts did not have access to the records of the flurry of emergency room visits in 2023 and 2024 (15 or more visits). Nor did the experts view the records of Reece's inpatient treatment in May 2024 for suicidal ideation. The Court recognizes the ALJ is not obligated to obtain a consultative examination and adopt it verbatim. But it is clear that current consultative exams, or up-to-date opinions from Reece's treating providers, can provide useful data and assist the

ALJ in assessing Reece's physical and mental abilities[1] during the relevant time period. The ALJ's RFC determination must be supported by medical evidence addressing Reece's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

IT IS THEREFORE RECOMMENDED that Bisignano's decision be reversed and the case be remanded for further proceedings consistent with this Recommendation.

IT IS SO ORDERED this 23rd day of September, 2026.

UNITED STATES MAGISTRATE JUDGE

[1] Reece's hearing testimony of numerous impairments, including mental impairments, seemed to be unexpected, as the ALJ said, "my impression was this was more of a scoli [scoliosis] case." (Tr. 70).